IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRENCE BROWNLEE,

    Plaintiff,                    No. CIV S-08-0661 LKK GGH P

vs.

R. CLAYTON, et al.              ORDER and

    Defendants.          FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. By Order, filed on May 10, 2011, this court vacated a number of submitted motions from its calendar pending the Ninth Circuit's resolution of plaintiff's interlocutory appeal, at which point the motions were to be re-noticed by this court. In a mandate filed in this court's case docket on July 28, 2011, the Ninth Circuit summarily affirmed the district court's denial of plaintiff [appellant's] request for injunctive relief. Therefore, the court now re-notices the following previously submitted but vacated motions and addresses them: 1) defendants Stocker and Grannis' motion to dismiss, pursuant to Fed. R. Civ. 12(b)(6), filed on September 23, 2010, to which plaintiff filed his opposition on October 6, 2010, after which a reply was filed by these defendants on October 14, 2010; plaintiff thereafter filed a

1

response to the reply (or a surreply), on October 25, 2010, a filing not contemplated within the Federal Rules of Civil Procedure or the Local Rules which will be disregarded; 2) plaintiff's motion pursuant to Fed. R. Civ. P. 50, filed on September 29, 2010; 3) plaintiff's motions for default judgment, filed on October 6, 2010, as to defendant Clayton, and on November 3, 2010, as to defendants Kansier and Sahota; 4) defendants Clayton, Kansier and Sahota's motion to dismiss, pursuant to Rule 12(b)(6), filed on December 13, 2010, to which plaintiff filed an opposition on January 3, 2011, after which these defendants filed their reply, following which plaintiff filed a response or surreply, on January 21, 2011, which will be disregarded as not in compliance with the applicable rules of motion practice; 5) defendants Clayton, Kansier and Sahota's January 26, 2011, motion to strike plaintiff's January 21, 2011 "surreply" to their motion to dismiss,[1] to which no response was filed, which will be denied as moot.

Plaintiff's Miscellaneous Motions

*Plaintiff's Motion pursuant to Rule 50*

Essentially, plaintiff seeks judgment as a matter of law, premised on his objections to two requests for extension of time made by defendants, arguing that they have defaulted on their obligation to respond to the second amended complaint within 60 days. A motion under Fed. R. Civ. P. 50 is both premature and inapposite in this context. McSherry v. City of Long Beach, 423 F.3d 1015, 1019, 1024-25 (9th Cir. 2005)(district court judgment reversed where court inappropriately granted Rule 50 motion pre-trial before evidence presented to jury); Summers v. Delta Air Lines, Inc., 508 F/3d 923, 928 (9th Cir. 2007)(a party with relevant, admissible witness testimony to present at trial precludes the court under Rule 50(a) from requiring such testimony be instead given through an offer of proof). Moreover, the court granted defendants' first request for a time extension and modified the second before granting it, and in any case, the defendants who sought the extension filed their response well before the

---

[1] No such motion was brought as to the first motion to dismiss.

1  second time extension period expired.  Plaintiff's putative Rule 50 motion will be denied as
2  wholly frivolous.

3                      *Plaintiff's Motions for Default*

4          Plaintiff's motion for default as to defendant Clayton contends that this defendant
5  exceeded the 60 days for filing a Rule 12 motion (or answer) in response to his second amended
6  complaint.   There is some confusion in the docket as to how and when defendant Clayton was
7  served.  An executed waiver of service is signed by defendant R. Clayton and dated October 8,
8  2010. See docket # 53.  However, the process receipt indicates that multiple efforts to mail the
9  waiver of service in June of 2010 were unsuccessful and, on October 4, 2010, process was
10 assigned to be personally served and, on October 13, 2010, defendant Clayton was personally
11 served.  Id.  In any case, the waiver of service of summons indicating Clayton had 60 days to
12 respond to the action, was updated to show the time for him to respond ran from October 4,
13 2010.  Assuming defendant Clayton was entitled to the 60 days from October 4, 2010, despite
14 contra-indications of personal service on October 13, 2010, this defendant should have filed his
15 response by December 6, 2010 (adding three days under Fed. R. Civ. P. 6(d)).  His motion to
16 dismiss, which included defendants Kansier and Sahota, was filed on December 13, 2010.
17 Docket # 53 & # 61.  If the 60 days were deemed to run from the date indicated for personal
18 service, October 13, 2010, the response would be timely.  Finally, in the docket of this case, the
19 executed waiver, filed on October 22, 2010, the text entry, which appears to be incorrect,
20 indicates defendant Clayton's answer to be due by December 21, 2010.  Docket # 53.  Because,
21 in any event, any belatedness is not more than de minimis, the court will deny the motion for
22 entry of default as to defendant Clayton.

23         As to plaintiff's motion for default with regard to defendants Kansier and Sahota,
24 although waivers of service of summons were initially returned unexecuted for these individuals,
25 this court granted plaintiff's request for judicial intervention and these defendants ultimately
26 waived service of process on December 2, 2010, had 60 days from November 12, 2010, to file a

3

1 response and filed their motion to dismiss on December 13, 2010; thus, they were ultimately
2 served and have appeared timely in this action.  See Docket # 46, # 61 & # 62.  Plaintiff's motion
3 for a default judgment as to these defendants will be denied.
4 Motions to Dismiss
5                               *Legal Standard for Motion to Dismiss*
6                In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),
7 a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"
8 it must contain factual allegations sufficient to "raise a right to relief above the speculative
9 level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The
10 pleading must contain something more ... than ... a statement of facts that merely creates a
11 suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal
12 Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain
13 sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
14 Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at
15 570, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content
16 that allows the court to draw the reasonable inference that the defendant is liable for the
17 misconduct alleged."  Id.
18                In considering a motion to dismiss, the court must accept as true the allegations of
19 the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.
20 Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the
21 motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,
22 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume
23 that general allegations embrace those specific facts that are necessary to support the claim.'"
24 National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803
25 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).
26 Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

   The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

   A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*Motion Grounds*

   Because the allegations in plaintiff's complaint intermingle all the remaining defendants so fully, and both motions to dismiss are made pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, the court will consider the motions together. See Notices of First and Second Motions to Dismiss (docket # 41 & # 61). As to defendants Stocker, Grannis, and Sahota, defendants contend that plaintiff's allegations against them center solely on their participation in the grievance process with regard to a number of plaintiff's appeals regarding his medical condition. Memoranda of Points and Authorities, hereafter referred to, when referencing the first motion to dismiss (docket # 41 -1), brought on behalf of defendants Stocker and Grannis, as FMTD, and, when referring to the second motion to dismiss (docket # 61-1), brought on behalf of Clayton, Kansier and Sahota, as SMTD.[2]  As to the remaining defendants, Clayton and Kansier, defendants maintain that plaintiff fails to state an Eighth Amendment claim against them. SMTD, pp.4-7.

---

[2] See also, Reply (docket # 49), filed on 10/14/10 and Reply (docket # 64), filed on 1/10/11.

*Plaintiff's Allegations*

The gravamen of plaintiff's second amended complaint in which he seeks money, including punitive, damages, but not injunctive relief, is that defendants have been deliberately indifferent to a serious medical need, a spinal injury which has damaged his nerves, in violation of the Eighth Amendment, subjecting him to cruel and unusual punishment, when his medical re-evaluation led, on April 25, 2006, to the rescinding of a medical chrono, which had been issued on March 23, 2006, and had indicated that he was unable to get down during alarms even though there had not been a change in his medical condition to warrant such a rescission.  Second Amended Complaint (SAC), pp. 4-15.[3]  Although this is the heart of plaintiff's action, it is necessary to break the allegations out with greater detail with respect to the individual defendants.[4]

*Administrative Appeal - 12/17/05*

On December 17, 2005, plaintiff filed a CDC 602 appeal (log no. FSP 05-1883) claiming delay in receiving medical care since having been transferred to Old Folsom State Prison (FSP) from Soledad State Prison on December 7, 2005, where he had apparently been scheduled for surgery.  SAC, pp. 3-4 & Exhibit (Ex.) A, p. 18.  The appeal was partially granted on February 8, 2006, at the first level by defendants Kansier and Stocker, finding that plaintiff had been seen on multiple occasions for his complaints, that he had had an MRI on his spine, that he had received pain medication, a comprehensive accommodation chrono and was scheduled for a neurological consultation the next month which might lead to a surgery recommendation.  Id. at

---

[3] Only the court's electronic pagination is referenced.

[4] The second amended complaint references a number of claims with regard not only to the present defendants but also as to various other individuals no longer a party to this action; as such, former defendants, so identified, are referenced only to the degree the claims are entangled with current defendants, but claims against these former defendants are obviously no longer at issue.  Where plaintiff simply names a number of individuals, including the present defendants, in making certain claims those former defendants are no longer parties and are not referenced.

4, 20-21. Following his February 20, 2006, appeal to the second level, plaintiff's grievance was partially granted, on April 3, 2006, by defendant Sahota and former defendant Cardeno.[5] Id. at 4, 22-23. The findings of the first level appeal response were found to satisfy plaintiff's concerns with the observation that he had received a neurological consultation on February 21, 2006, wherein the doctor had recommended a further procedure that was still to be scheduled and that another physician had completed a CDC 7243 on Feb. 22, 2006. Id. at 22-23. His April 12, 2006, third level appeal was denied by former defendant D.L. Porter (on behalf of defendant Grannis) on July 13, 2006. Id. at 4, 24-25. Plaintiff alleges that defendants Kansier, Stocker and Sahota thereby, in general and formulaic language without adequate specificity, participated in the deprivation of his constitutional rights. Id. at 4.

*Administrative Appeal - 5/06/06*

Plaintiff filed a CDC 602 appeal on May 6, 2006 (log no. FSP 00-00716), claiming that on April 19, 2006, defendant Kansier rescinded plaintiff's prior CDC 7410, Comprehensive Accommodation Chrono allowing him not to have to get down during alarms, even though plaintiff has damaged nerves from a spinal injury which keep him from getting down during alarms. SAC, pp. 4-5, Ex. C, pp. 37-50; Ex. E, pp. 86, 88; see also, memorandum dated 4/21/06 signed by defendant Nurse Practitioner Kansier (directed to Facility Captain V. Mini (not a party) and defendant Clayton, noting that the 3/17/06 CDC 7410 was being rescinded pursuant to a re-evaluation of plaintiff's disability status. Id., at 49. Defendant Kansier is a signatory to a CDC 1845 Disability Placement Program Verification form (also identified by hand as a CDC7410, dated 4/19/06, restricting plaintiff to a lower bunk and no stairs, also noting "no bending, stooping, squatting, or standing for extended periods of time," which restrictions were also on the earlier CDC 7410. Id., at 41, 45, 89. According to plaintiff, defendant Kansier told him that Captain Mini gave the order rescinding the CDC 7410, which Mini denied, on April

---

[5] It actually appears on the copy of the grievance submitted by plaintiff attached to his second amended complaint that Cardeno signed the response on behalf of defendant Sahota.

7

28, 2006, when plaintiff talked to him about it. Id., at 5. The appeal was denied at the first level by defendants Kansier and Stocker, on June 21, 2006, thereafter at the second level by defendant Sahota, on August 31, 2006, and at the third level by an individual on behalf of defendant Grannis on December 11, 2006. Id., at 5, 41-42, 45-46. Defendants Kansier, Sahota, Stocker and Grannis[6] are thereby alleged to have deprived plaintiff of his constitutional rights, causing him further unspecified injury. Id., at 5-6.

*Administrative Appeal - - 7/24/06*

On July 24, 2006, plaintiff filed a CDC 602 (log no. FSP-06-01129), stating he had had an operation outside the prison on July 10, 2006, but that the outside doctor's orders were "not being upheld." SAC, p. 6, Ex. D, pp. 51-67. This appeal was partially granted at the first level by a former defendant Dunlap, on September 20, 2006, and partially granted at the second level on November 20, 2006, by defendant Sahota. Id., at 6, 54. It is noted in the second level appeal response that in the first level decision, plaintiff was informed that:

> Due to your difficulty to traverse the stairs at FSP, and difficulty in complying with alarms (i.e., getting down on the ground, prone or sitting) you are being endorsed for transfer to a Medical Facility to accommodate your level of disability.

Id., at 6, 54, 56.

It was also noted that plaintiff had an April 19, 2006 chrono "indicating a medical need for low bunk, low tier housing and no stairs." Id., at 54, 56. Plaintiff states that he filed a third level appeal on December 5, 2006, which was denied,[7] for which he apparently places the responsibility upon defendants Stocker and Sahota. Id., at 6-7.

*Administrative Appeal - - 9/01/06 & Disciplinary Write-Up of 6/26/06*

On September 1, 2006, plaintiff filed a CDC 602 (log no. FSP-0-06-01472),

---

[6] Although defendant Grannis is not specifically named in the body of the allegations with respect to this grievance, the court infers that plaintiff intended to name this individual as to this appeal denial in light of the attached exhibits.

[7] Plaintiff does not include a copy of that decision.

regarding the chrono, issued on March 23, 2006, by an unnamed doctor, which stated plaintiff was unable to get down during alarms, after which on April 8, 2006, defendant Clayton authored a memorandum to the Chief Medical Officer[8] asking for plaintiff to be re-evaluated. SAC, pp. 7, 119 (reported by defendant Clayton in a supplemental report to plaintiff's rule violation report). It appears on the face of it that it was defendant Clayton, by his own admission, rather than non-party Captain Mini, who had requested the re-evaluation and see below. On April 25, 2006, defendant Clayton received an updated chrono restricting the March 23, 2006, chrono, although plaintiff claims that his spinal injury remained the same and his medical condition had not altered. Id., at 7-9.

On June 26, 2006, plaintiff was written up for failing to get down during an alarm, the same day he was due to go out for an operation on his spine's L5-S1, L4-S1. SAC, pp. 7-8. Plaintiff alleges that due the FSP's medical department having "messed up" his paperwork, plaintiff's treatment was delayed and denied.[9] Id., at 8. Plaintiff alleges that defendants Kansier, Stocker and Sahota of the FSP medical department, along with correctional staff including defendant Clayton, disregarded plaintiff's medical issues. Id.

In the second level appeal response to log no. FSP-0-06-01472 by non-parties, it was noted that plaintiff was again evaluated by Dr. B. Lee, who on October 4, 2006, documented on a CDC 1845 Disability Placement Program Verification form that plaintiff was to do "no lifting, bending, stooping or standing for extended periods of time" and was "to avoid stairs." Id. at 8. Plaintiff claims that defendant Clayton knew that he had been issued a chrono stating he was unable to get down during alarms. Id., at 8-9. Defendant Clayton authored the April 8, 2006 memorandum asking the Chief Medical Officer to re-evaluate plaintiff, resulting in plaintiff

---

[8] Although the name is not included, the Chief Medical Officer appears to have been defendant Sahota.

[9] Plaintiff, not entirely coherently, somehow appears to be trying to link his getting written up to a claim that the FSP medical department "messed up" his paperwork which ended by delaying a spinal operation he was to receive the same day. SAC, pp. 7-8.

receiving an updated chrono restriction on March 23, 2006. Id., at 9. Thus, defendant Clayton personally participated in allegedly depriving plaintiff of his constitutional rights. Id.

*Administrative Appeal - - 12/20/06*

On November 11, 2006, plaintiff was endorsed by an FSP classification staff representative for Pleasant Valley State Prison, which is designated a Disability Placement Program institution. SAC, p. 9. Plaintiff, however, was sent to High Desert State Prison (HDSP), subjecting him to unspecified further harm and injury. Id. Plaintiff appealed log no. FSP-0-06-01472 to the director's level on December 20, 2006; when he received no response, he wrote to the inmate appeals branch on September 25, 2007. Id., at 10, Ex. F, p. 91. Plaintiff received a letter dated November 8, 2007, from defendant Grannis (actually signed for her by someone else) stating that there was no record of the appeal's having been submitted. Id., at 10, Ex. G, p. 94. Plaintiff alleges that this delay caused him further injury, but does not specify how. Id., at 10. Plaintiff wrote to the inmate appeals branch on December 29, 2009, apparently indicating his dissatisfaction with this response. Id. Plaintiff requested and obtained a list of outgoing mail from FSP which indicated that on December 21, 2006, plaintiff had sent mail to the Chief of Inmate Appeals. Id., at 10, Ex. H, p. 102. After he re-submitted his appeal per defendant Grannis' instructions, defendant Grannis personally participated in the deprivation of his constitutional rights. Id., at 11-12, Ex. K, pp. 113-117.

*Administrative Appeal - - 4/23/07*

Plaintiff goes on to complain about having filed another grievance at HDSP on April 23, 2007, complaining that he was being deprived of his rights under the ADA by having to get down during an alarm on that day and describing his impairment and needs, but the appeal was screened out, as was his May 16, 2007, letter and complaint to the medical department. SAC, pp. 12-13. When he, nevertheless, sent the appeal to defendant Grannis, it also was screened out, further delaying his medical care. Id., at 13. His July 27, 2007 CDC 1824 form requesting he be treated for pain was screened out by former defendant Chapman who also

1  screened out an August 6, 2007 CDC 1824 request as well as one filed on August 9, 2007,
2  causing plaintiff further injury. Id., at 13-14. Plaintiff complains that his transfer to HDSP
3  instead of a medical facility given the limitations of his condition violates his constitutional
4  rights. Id., at 14-16. However, plaintiff, while he may seek to hold defendant Grannis
5  responsible for not processing his appeal regarding the transfer, does not allege that any of the
6  defendants against whom this action is at this point proceeding is responsible for the transfer and
7  any claim arising from his appeals regarding the transfer will be dismissed.

8               Argument & Analysis

9        Defendants Stocker, Grannis and Sahota argue that plaintiff's claims against them
10 must fail because they center on his dissatisfaction with their responses to his medical
11 appeals/grievances a procedure to which he does not have a substantive constitutional right.
12 FMTD, pp. 4-6; SMTD, pp. 7-8. Plaintiff maintains that these defendants in failing to grant his
13 medical appeals individually participated in a deprivation of his Eighth Amendment right to
14 adequate medical care. Opposition to FMTD (Opp.1), pp. 1-20; Opp. to SMTD (Opp.2), pp. 1-4.
15       Prisoners do not have a "separate constitutional entitlement to a specific prison
16 grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v.
17 Adams, 855 F.2d 639, 640 (9th Cir. 1988). Even the non-existence of, or the failure of prison
18 officials to properly implement, an administrative appeals process within the prison system does
19 not raise constitutional concerns. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). See also,
20 Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir.
21 1991). Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure
22 is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it
23 does not give rise to a protected liberty interest requiring the procedural protections envisioned
24 by the fourteenth amendment"). Specifically, a failure to process a grievance does not state a
25 constitutional violation. Buckley, supra. State regulations give rise to a liberty interest protected
26 by the Due Process Clause of the federal constitution only if those regulations pertain to

"freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).[10]  Any due process claim against these defendants will be dismissed.

Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989). In addition, where a supervisor has a duty under law to correct unlawful conditions, knows about them, and has the authority to rectify same, he can be held personally liable under an acquiescence theory when he does nothing in light of his knowledge. Starr v. Baca, __F.3d__, 2011 WL 2988827 (9th Cir. 2011).

"Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980). "Without proximate cause, there is no § 1983 liability." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

> The search, which was performed in accordance with this constitutionally valid strip search policy, was subsequently ratified by the School Board when Mr. Williams filed a grievance. Therefore, Williams' only grasp at evoking municipal

---

[10] "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

> liability under § 1983 is to show that this subsequent ratification is sufficient to establish the necessary causation requirements. Based on the facts, the Board believed Ellington and his colleagues were justified in conducting the search of Williams. There was no history that the policy had been repeatedly or even sporadically misapplied by school board officials in the past. Consequently, the School Board cannot be held liable for the ratification of the search in question, because this single, isolated decision can hardly constitute the "moving force" behind the alleged constitutional deprivation.

Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).

This court is unwilling to adopt a rule that anyone involved in adjudicating grievances after the fact is per se potentially liable under a ratification/acquiescence theory. However, this is not to say that persons involved in adjudicating administrative disputes, or persons to whom complaints are sometimes made can never be liable under a ratification theory. If, for example, a reviewing official's rejections of administrative grievances can be construed as an automatic whitewash, which may have led other prison officials to have no concern of ever being reprimanded, a ratifying official may be liable for having put a defective policy in place. Certainly factual allegations (as opposed to conclusions) of conspiracy between the line officials and the grievance reviewers could land the reviewers in court.

In this instance, plaintiff appears to be claiming that because he did not receive the precise treatment that he sought each time he filed a medical grievance that these defendants participated in the allegedly inadequate medical care for his serious medical condition. The undersigned finds that claim far beyond any liability permitted by § 1983, and claims based solely on such a theory should be dismissed.[11]

////

---

[11] It would be absurd to find that grievance reviewers are proper defendants every time the reviewer denies or even partially grants a claim. Who would want the job? Judging just from the prisoner case § 1983 docket in federal court, prisoners as a whole file thousands of grievances every year. A rule of acquiescence for "supervisorial liability" should not be extended to its illogical extreme in the grievance context.

<u>Legal Standard for Eighth Amendment Claim</u>

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., <u>Wood v. Housewright</u>, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. <u>Id.</u> at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. <u>Id.</u> at 842, 114 S. Ct. at 1981.

////

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is <u>actually</u> aware. <u>Id.</u> at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Id.</u> at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. <u>Id.</u> at 840-42, 114 S. Ct. at 1981. However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to <u>competently</u> treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. <u>Id.</u>

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. <u>McGuckin</u>, 974 F.2d at 1060, citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and <u>Hudson</u>, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the

1  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those
2  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of
3  the defendant." McGuckin, 974 F.2d at 1061.
4     As to defendants Kansier, Stocker and Sahota, plaintiff does not adequately
5  demonstrate an Eighth Amendment violation by way of their ratification of a defective procedure
6  in the partial granting of Dec. 17, 2005, 602 appeal log no. FSP 05-1883, claiming delay in
7  receiving medical care since having been transferred to Old Folsom State Prison (FSP) from
8  Soledad State Prison on December 7, 2005, at the first and second levels, where there the
9  medical treatment he had received and was due to receive was explicitly set forth,
10 notwithstanding plaintiff's apparent dissatisfaction with it.  Nor does a non-party's third level
11 appeal denial on behalf of defendant Grannis implicate an Eighth Amendment violation.  In any
12 event any claim arising from this grievance against defendants Kansier, Stocker, Sahota and
13 Grannis should be dismissed.  Nor does plaintiff frame a colorable claim against defendant
14 Grannis with respect to frustration about his difficulty in processing his appeals in log no. FSP-0-
15 06-01472 or his HDSP grievance filed on April 23, 2007.
16    The court's review of plaintiff's allegations and his attached exhibits demonstrate
17 that he has actually framed claims of an Eighth Amendment violation sufficient to survive the
18 defendants' motions to dismiss only as to one claim and only as to defendants Kansier, Clayton
19 and Sahota.  Plaintiff has alleged deliberate indifference when his chrono was altered to remove a
20 physician-imposed restriction which had been intended to keep plaintiff from being compelled to
21 get down during alarms.  In the revised chrono, rescinding the restriction of not having to get
22 down during alarms, the limitation was still imposed that plaintiff was not to be forced to bend,
23 stoop, squat, or stand for extended periods of time.  While defendants argue that the re-evaluation
24 resulted in merely a difference of opinion regarding appropriate medical treatment, it is at least
25 questionable that defendant Clayton, who was a correctional lieutenant and not a medical
26 professional, as he admits (SMTD, p. 5), authored the memorandum to the chief medical officer,

seeking a re-evaluation of plaintiff's disability status some two weeks after the issuance of the chrono, and that the subsequent re-evaluation by defendant Kansier, a nurse practitioner apparently overrode the medical recommendation or limitation by a physician made less than a month earlier. In addition, to the extent that defendant Sahota, the chief medical officer, endorsed this re-evaluation upon plaintiff's appeal, it is arguably a ratification of defendant Kansier's re-evaluation over that of a physician showing deliberate indifference to plaintiff's alleged pain arising from his spinal condition. Plaintiff's claims against Kansier, Clayton and Sahota regarding the modification of his chrono are sufficient to withstand a motion to dismiss, but no other claims should. Thus, the remaining claims and defendants Stocker and Grannis should be dismissed.

Accordingly, IT IS ORDERED that:

1. The following submitted motions, located at docket #41, docket #45, docket #48, docket #57, docket #61, docket #67, are hereby re-noticed on the court's calendar, following the disposition by the Ninth Circuit of plaintiff's interlocutory appeal, and are resolved, or otherwise addressed, as follows:

2. Plaintiff's motion pursuant to Fed. R. Civ. P. 50, filed on September 29, 2010 (docket # 45), is denied as wholly frivolous;

3. Plaintiff's motions for default judgment, filed on October 6, 2010 (docket #48), and on November 3, 2010 (docket #57), are denied;

4. Plaintiff's responses to the replies (or his surreplies) at docket #54 and docket #66, filed following defendants' reply to each opposition to the respective motions to dismiss, are disregarded as inapposite; and

5. Defendants' January 21, 2011 (docket #67), motion to strike plaintiff's surreply (docket #66) to defendants' reply (docket #64), is denied as moot.

IT IS RECOMMENDED that:

1. The motion to dismiss, filed on September 23, 2010 (docket #41), on behalf of

defendants Stocker and Grannis be granted;

  2. The motion to dismiss, filed on December 13, 2010 (docket #61), on behalf of defendants Clayton, Kansier and Sahota be denied; and

  3. This action proceed as to defendants Clayton, Kansier and Sahota solely on plaintiff's claim that they were deliberately indifferent to plaintiff's serious medical condition when the chrono restriction indicating that plaintiff was not to have to get down during alarms was removed.

  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 11, 2011

          /s/ Gregory G. Hollows
          UNITED STATES MAGISTRATE JUDGE

GGH:009
brow0661.mtd+