1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   TERRENCE BROWNLEE,

11           Plaintiff,                    No. 2:08-cv-0661 LKK AC P

12       vs.

13   R. CLAYTON, et al.,

14           Defendants.          FINDINGS AND RECOMMENDATIONS

15   _____/

16           Plaintiff, a state prisoner who is mobility-impaired, is proceeding pro se with a

17   civil rights action pursuant to 42 U.S.C. § 1983.  Before the court is Defendants' motion for

18   summary judgment, which has been fully briefed.

19                              BACKGROUND

20           This Eighth Amendment case is proceeding against defendants Clayton, Kansier

21   and Sahota, twelve other defendants having been dismissed.  The claim that has survived

22   screening and previous motions to dismiss challenges the withdrawal of an accommodation to

23   plaintiff's disability: an exemption from orders to "get down" during alarms at the prison.  The

24   Second Amended Complaint alleges that the moving defendants violated the Eighth Amendment

25   by modifying a medical chrono to discontinue plaintiff's disability-based exemption from "get

26   down" orders.  Defendants seek summary judgment on grounds that they did not disregard

1

1  plaintiff's medical need when he was examined and issued a superceding chrono on April 19,

2  2006.  Defendants also seek qualified immunity.

3  <u>SUMMARY JUDGMENT STANDARDS UNDER RULE 56</u>

4  Summary judgment is appropriate when it is demonstrated that there exists "no

5  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

6  law." Fed. R. Civ. P. 56(a).

7  Under summary judgment practice, the moving party

8  always bears the initial responsibility of informing the district
   court of the basis for its motion, and identifying those portions of
9  "the pleadings, depositions, answers to interrogatories, and
   admissions on file, together with the affidavits, if any," which it
10  believes demonstrate the absence of a genuine issue of material
   fact.

11

12  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the

13  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

14  judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

15  answers to interrogatories, and admissions on file.'" <u>Id.</u>, at 324.  Indeed, summary judgment

16  should be entered, after adequate time for discovery and upon motion, against a party who fails

17  to make a showing sufficient to establish the existence of an element essential to that party's

18  case, and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322.  "[A] complete

19  failure of proof concerning an essential element of the nonmoving party's case necessarily

20  renders all other facts immaterial."  <u>Id.</u> at 323.   In such a circumstance, summary judgment

21  should be granted, "so long as whatever is before the district court demonstrates that the standard

22  for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u>

23  If the moving party meets its initial responsibility, the burden then shifts to the

24  opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

25  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

26  establish the existence of this factual dispute, the opposing party may not rely upon the

2

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

1    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2    'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

3              On May 18, 2010 (ECF No. 31), the court advised plaintiff of the requirements

4    for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v.

5    Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409,

6    411-12 (9th Cir. 1988). Thereafter, on November 2, 2012 (ECF No. 93-1), defendants provided

7    plaintiff the contemporaneous notice required by Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).

8                                                FACTS

9              The following facts are undisputed unless otherwise indicated.

10             At the times relevant for this action, plaintiff was a prisoner at Folsom State

11   Prison (FSP) and defendants worked at FSP. Defendant Clayton was a correctional lieutenant,

12   defendant Sahota was the chief medical officer (CMO), and defendant Kansier was a nurse

13   practitioner.

14             Inmates at FSP are required to "get down" into a prone or seated position on the

15   floor or ground during an alarm. If an inmate remains standing during an alarm, responding

16   officers may force compliance.[1]

17             When an inmate's condition requires a physical accommodation that he would

18   otherwise not receive, his care provider issues a document called a "chrono" to prescribe the

19   accommodation needed. An inmate may be examined at any time to determine the status of his

20   medical condition and his chrono may be rescinded or updated based on the medical examination

21   and conclusion of his care provider. At FSP, a physician, physician's assistant, or a nurse

22   practitioner may examine and issue an inmate a chrono. When a chrono is issued, it supersedes

23

---

24        [1] Plaintiff states that he disputes these facts, ECF No. 102 at 2, but offers no evidence to
     contest defendants' showing. Plaintiff's objection is to the propriety of these policies and their
25   application to him, not to the empirical fact that inmates are generally required to "get down"
     during alarms. Any alleged inconsistency in enforcement of the policy is not material to the
26   Eighth Amendment analysis.

                                                   4

1   all previously issued chronos in effect at the time.

2          Plaintiff suffers from back pain and impaired mobility related to a degenerative

3   disc condition.  He uses a cane and wears an "ADA vest" to identify him as a disabled prisoner.

4   On March 17, 2006, plaintiff was issued a comprehensive accommodation chrono (Form CDC

5   7410) which, under "Physical Limitations to Job Assignments," stated: "No lifting, bending,

6   prolonged standing.  Is unable to 'get down' during alarms."  ECF No. 22 at 86 (copy of March

7   17, 2006 chrono).  The chrono was issued by a Dr. Torruella at FSP on March 17, 2006 and

8   approved on March 23, 2006 by an individual whose name on the form appears to be Alfredo S.

9   Renzo and who identified himself as "Chairman Chrono Committee."  Id.

10         On April 8, 2006, plaintiff did not get down during an alarm and refused orders

11  by an officer to get down.  Instead, plaintiff presented the March 17 chrono to demonstrate that

12  he was not required to comply.  Lt. Clayton thereafter sent a memorandum to CMO Sahota,

13  asking for a medical opinion on plaintiff's condition and review of the chrono.  Defendant

14  Kansier conducted the requested review on April 19, 2006.[2]  On that date Kansier issued plaintiff

15  a new chrono prescribing "No lifting, bending, stooping or standing for extended periods of time

16  — DC chrono of 3-17-06."  ECF No. 22 at 87.  The new chrono did not contain an exemption

17  from "get down" orders.  The April 19, 2006 chrono explicitly rescinded the previous chrono.

18  Id., see also ECF No. 22 at 88 (copy of April 21, 2006 memorandum from defendant Kansier

19

20         [2] In a declaration supporting the summary judgment motion, Kansier declares that he
21  personally examined plaintiff on April 19, 2006 (in addition to reviewing the medical record and
    plaintiff's MRI from December 2005), and that "[d]uring my examination, Brownlee was able to
22  get down without any sign of acute distress."  ECF No. 93-5 at 2.  Plaintiff disputes this fact and
    declares that he was never personally examined by Kansier.  ECF No. 102 at 2, 6, 9.  It should be
23  noted that plaintiff's exhibits to the Second Amended Complaint include the following: (1) a
    memo from Kansier documenting the April 19, 2006 examination (ECF No. 22 at 49); (2) a First
24  Level Decision denying plaintiff's grievance of the chrono dispute, which summarizes
    petitioner's relevant medical history and references an examination and re-evaluation by Kansier
25  on April 19, 2006 (id. at 41); and (3) a Second Level Appeal Response to a subsequent grievance
    regarding plaintiff's continued non-compliance with "get down" orders, noting that Kansier had
26  been interviewed regarding the matter and reported that he had examined plaintiff on April 19,
    2006 (id. at 71).

1   directed to, inter alia, defendant Clayton).  A Disability Placement Program Verification Form

2   also signed by Kansier on April 19, 2006, also stated: "No bending, stooping, squatting, or

3   standing for extended periods of time."  ECF No. 22 at 89 (copy of DPPV CDC 1845 Form);

4   ECF No. 102 (Plaintiff's Decl.), p. 9 at ¶ 8.

5           On June 26, 2006, plaintiff refused orders by Officer Ervin to get down during an

6   alarm.  Plaintiff was issued a Rules Violation Report charging him with disobeying orders.  The

7   formal charge was dismissed after a hearing that included consideration of plaintiff's physical

8   ability to "get down," but a report of misconduct was entered on a CDC Form 128A.

9           Defendant Sahota reviewed plaintiff's appeal log number FSP-O-06-00716 at the

10  second level concerning the chrono that was issued to him by defendant Kansier.  Before

11  defendant Sahota responded to the appeal, he reviewed plaintiff's Unit Health Record (UHR)

12  and the documents plaintiff submitted including the first level decision. ECF No. 93-6 (Sahota

13  Decl.), ¶ 11.  Defendant Sahota denied plaintiff's appeal.  ECF No. 22 at 45-46 (Second Level

14  Appeal Decision).

15                    ELEMENTS OF AN EIGHTH AMENDMENT VIOLATION

16          Inadequate medical care violates the Eighth Amendment when the acts and

17  omissions of prison officials are "sufficiently harmful to evidence deliberate indifference to

18  serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  To prevail, plaintiff must

19  show both that his medical needs were objectively serious, and that defendants possessed a

20  sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299 (1991).  The requisite

21  state of mind is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5 (1992).

22  Deliberate indifference standards govern an Eighth Amendment claim that prison officials

23  unconstitutionally failed to accommodate the safety needs of a disabled prisoner.  See Frost v.

24  Agnos, 152 F.3d 1124, 1128-29 (9th Cir. 1998).

25          In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

26  demanding standard for "deliberate indifference."  Negligence is insufficient.  Farmer, 511 U.S.

6

at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

violation.  Id. at 836-37.  Rather, deliberate indifference is established only where the defendant

*subjectively* "knows of and disregards an *excessive risk* to inmate health and safety."  Toguchi v.

Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted) (emphasis added).

Plaintiff must plead and prove both "(a) a purposeful act or failure to respond to a prisoner's pain

or possible medical need and (b) harm caused by the indifference."  Jett v. Penner, 439 F.3d

1091, 1096 (9th Cir. 2006).

To establish a defendant's liability for an Eighth Amendment violation under 42

U.S.C. § 1983, plaintiff must plead and prove an actual connection or link between the actions of

the individual defendant and the constitutional violation.  See, e.g., Starr v. Baca, 652 F.3d 1202,

1205-06 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).  "A person 'subjects' another to the

deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act,

participates in another's affirmative acts or omits to perform an act which he is legally required

to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740,

743 (9th Cir. 1978).

ANALYSIS

Plaintiff contends that his Eighth Amendment rights were violated by the

withdrawal of an accommodation to his disability: an exemption from orders to sit during alarms

at the prison.  The exemption was in effect for approximately one month before it was rescinded

by superceding chrono.  Plaintiff argues in essence that the April 19, 2006 chrono violated the

Eighth Amendment because it was motivated by custodial concerns rather than a proper medical

assessment of his disability.  He also disputes the conclusion that he can sit during alarms.  The

only negative consequence that plaintiff reports from the chrono is a disciplinary charge based

on his failure to obey a "get down" order after the disputed chrono discontinued his exemption.

////

1    *Plaintiff Has Not Demonstrated The Existence Of A Triable Issue Of Fact*

2    *Regarding Deliberate Indifference*

3         Defendants seek summary judgment on numerous grounds, the most fundamental

4    of which is plaintiff's failure to proffer facts sufficient to support a finding of deliberate

5    indifference as to any of them.  A complete failure of proof on an essential element of the claim

6    renders all other facts immaterial and supports summary judgment.  Celotex, 477 U.S. at 323.

7         Defendant Clayton

8         Defendant Clayton, a correctional lieutenant, requested the review of plaintiff's

9    March 17, 2006 disability accommodation chrono after plaintiff relied on it when ordered to get

10   down on April 8, 2006.  Plaintiff maintains that Clayton was motivated by purely custodial

11   concerns and acted with disregard for plaintiff's medical needs.  Defendants contend, and

12   produce supporting evidence, that Clayton was motivated by concerns for plaintiff's safety as

13   well as for institutional security.  Plaintiff contests the credibility of Clayton's declaration that he

14   was motivated by concern that plaintiff either posed or could be perceived as a potential security

15   threat by remaining standing during alarms.  Plaintiff argues that Clayton's purported motivation

16   is contradicted by the fact that the "get down" policy was not generally enforced against plaintiff

17   due to his obvious disability.  To the extent this challenge creates a factual dispute, the dispute is

18   immaterial.

19        Even assuming that Clayton was motivated exclusively by custodial or rule-

20   enforcement concerns and was not personally concerned with plaintiff's medical needs, his

21   request for a medical re-evaluation of the chrono did not cause the alleged Eighth Amendment

22   violation.  See Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988) (discussing causation

23   principles that apply under § 1983).[3]  Plaintiff has identified no facts showing that Clayton had

24   _____

25        [3]  Moreover, the Ninth Circuit has held that practices motivated by institutional security
     concerns are not for that reason deliberately indifferent to the health of safety needs of inmates –
26   indeed, the fact that officials are motivated by legitimate security concerns can be evidence that

1   any influence over the medical decision itself.[4]  Clayton's only act was to make a request, based

2   on the custodial concerns that were within his sphere of responsibility, for a medical opinion.

3          Causation concerns aside, plaintiff has tendered no evidence and pointed to no

4   facts that would support a rational trier of fact in concluding that Clayton subjectively knew of

5   and disregarded a serious risk that requiring plaintiff to get down during alarms would cause

6   plaintiff further injury or substantial suffering.  The record is devoid of evidence that Clayton

7   had any information about plaintiff's medical condition other than the contents of the March 17,

8   2006 chrono.  That plaintiff walks with a cane, wears an ADA vest, and requires a lower bunk

9   and housing without stairs, does not necessarily mean that sitting during an alarm is impossible

10  or medically dangerous for him, or so painful as to implicate the Eighth Amendment.  Without

11  evidence that Clayton knew of a substantial risk of harm, the claim against him fails as a matter

12  of law.  See Toguchi, 391 F.3d at 1057.

13             Defendant Kansier

14         Defendant Kansier wrote the April 19, 2006 chrono; his conclusion that plaintiff

15  was physically able to get down during alarms and did not need an exemption is at the heart of

16  the case.  Plaintiff's disagreement with Kansier's opinion is insufficient as a matter of law to

17  establish an Eighth Amendment violation.  See Toguchi, 391 F.3d at 1057 (difference of opinion

18  regarding treatment between prisoner and prison medical authorities does not give rise to Eighth

19  Amendment claim).  The question is whether Kansier acted with deliberate indifference.  As the

20  party opposing summary judgment, plaintiff has failed to identify any facts that would support a

21  finding that Kansier was subjectively aware of a serious risk to plaintiff from requiring him to

22  _____

23  they were *not* deliberately indifferent.  See LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993)
    (in-shower restraints for violent inmates do not violate Eighth Amendment on safety grounds).
24
25     [4]  During the administrative review process, plaintiff insisted that the April 19 chrono
    was the result of improper influence over nurse Kansier by Facility Captain V. Mini, not by
    Clayton.  See, e.g., ECF No. 22 at 41 (First Level Appeal Decision, summarizing inmate's
26  arguments).

comply with "get down" orders.

        Plaintiff directly disputes by his own declaration Kansier's representation that he personally examined plaintiff on April 19, 2006 and observed that plaintiff was able to sit without undue pain. See, ECF No. 93-5 (Kansier Decl.). This factual dispute does not entitle plaintiff to proceed to trial against Kansier, however, because the dispute although genuine is not material. Even if Kansier based his chrono on a medical file review alone, and even if doing so was improper or professionally negligent or resulted in an incorrect conclusion, that would not establish a constitutional violation. Plaintiff has produced no evidence from which a trier of fact could conclude that Kansier subjectively knew of a substantial risk of harm. Plaintiff points to the prior chrono issued by another medical provider stating that he could not "get down," but a difference of opinion between medical providers does not establish deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Plaintiff has produced nothing from his medical or custodial files, or any other facts, that would have informed Kansier that sitting for brief periods was physically impossible for him, caused substantial pain, or risked further injury.[5] Cf. Frost, 152 F.3d at 1129 (finding deliberate indifference where prison officials failed to provide disabled prisoner with shower accommodations although they knew that the unsafe conditions had caused plaintiff to repeatedly fall and injure himself). Without evidence to support the necessary inferences regarding Kansier's state of mind, plaintiff has failed to

---

        [5] Plaintiff's own exhibits demonstrate that Kansier had examined him in the past, which suggests that Kansier was familiar with plaintiff's condition and limitations. See ECF No. 22 at 20, 22. Plaintiff's exhibits also reflect that Kansier's opinion was later affirmed by Dr. Dunlap, who had previously provided care to plaintiff for his back and was also presumably familiar with his limitations. See ECF No. 22 at 84 (Second Level Appeal Response to appeal of June 26, 2006 RVR, stating that Dr. Dunlap had concurred); ECF No. 22 at 20 (First Level Appeal Decision of appeal regarding medical care, summarizing treatment history including examinations by Dr. Dunlap). Moreover, at the disciplinary hearing regarding plaintiff's refusal to "get down" on June 26, 2006, plaintiff requested testimony from the Associate Warden responsible for compliance with the Plata consent decree ("L. Rianda, AW-PLATA"). When asked whether plaintiff had "a legitimate reason to not get down during alarms," Rianda replied: "Yes and no. He does have a medical issue with his back. He has had back surgery, and has more surgeries scheduled. However, inmate BROWNLEE has been told by his doctor that he can 'get down' for alarms, even though it will be very slowly." ECF No. 22 at 77.

1  demonstrate the existence of a triable fact regarding deliberate indifference.  Accordingly, all

2  other factual disputes are immaterial.  Celotex, 477 U.S. at 323.

3                    Defendant Sahota

4                    Defendant Sahota cannot be liable for the medical decisions of others, even if

5  those decisions are deliberately indifferent, merely because he was the Chief Medical Officer at

6  the prison.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (no supervisory liability

7  under § 1983); Iqbal, 129 S.Ct. at 1948 (vicarious liability inapplicable to § 1983 actions).

8  Plaintiff must establish that Sahota caused or was personally involved in any constitutional

9  deprivation.  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  Sahota's alleged involvement

10 in this matter consists of receiving Clayton's memo requesting a re-evaluation, and later

11 reviewing and denying plaintiff's administrative appeal of Kansier's chrono.  The undersigned

12 draws an inference in plaintiff's favor that Sahota was responsible for arranging Kansier's re-

13 evaluation at Clayton's request.  There is no evidence, however, that Sahota compelled or even

14 influenced Kansier's conclusion, or had promulgated or enforced any policy regarding disability

15 accommodations that resulted in Kansier's conclusion.  See Hansen, 885 F.2d at 646

16 (supervisors may be liable if they implement a policy so deficient it is the "moving force" of the

17 violation).  Moreover, there is a complete absence of facts from which a reasonable trier of fact

18 could infer that Sahota subjectively knew of and disregarded, either at the time he ordered a re-

19 evaluation or at the time he reviewed plaintiff's grievance, the risk that withdrawal of the

20 exemption would cause plaintiff further injury or substantial suffering.  See Toguchi, 391 F.3d at

21 1057.  Accordingly, Sahota cannot have unnecessarily and wantonly inflicted pain, see Estelle,

22 429 U.S. at 106, and therefore cannot be liable for an Eighth Amendment violation.

23                    *Plaintiff Has Produced No Evidence Of Cognizable Harm*

24                    Plaintiff's case suffers from another fundamental failure of proof: he has

25 proffered no facts demonstrating that the change to his accommodation chrono caused any harm

26 cognizable in the Eighth Amendment context.  See Jett, 439 F.3d at 1096 (plaintiff must

11

demonstrate harm caused by the indifference).  Plaintiff has provided evidence that he was

charged with misconduct for failing to obey "get down" orders after the April 19, 2006 chrono

discontinued his exemption from compliance.  However, he does not allege that he has

experienced any physical harm or suffered pain as the result of the chrono.  Indeed, in opposition

to summary judgment plaintiff has affirmatively represented that he has <u>not</u> been forced to get

down.  <u>See</u> ECF No. 102 at 7 (Plaintiff's Disputed Fact No. 32).[6]  Without evidence of harm, a §

1983 damages claim for an Eighth Amendment violation may not proceed.  <u>See</u> <u>LeMaire v.</u>

<u>Maass</u>, 12 F.3d 1444, 1457 (9th Cir. 1993) (affirming summary judgment for defendants where

"[t]here is no evidence in the record [plaintiff] has suffered any serious injury . . . which is

cognizable under the objective component of Eighth Amendment claims.").  Although injunctive

relief may be available in some circumstances to prevent future harm even before serious injury

has occurred,  <u>id.</u>, no such claim is presently before the court.[7]  Plaintiff's complete failure of

proof regarding harm provides alternative grounds for summary judgment on his remaining

claim.

### *Defendants are Entitled to Qualified Immunity*

The defense of qualified immunity protects government officials "from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>,

457 U.S. 800, 818 (1982).  In resolving a claim for qualified immunity the court addresses two

questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate

that the officers' actions violated a constitutional right, and (2) whether a reasonable officer

could have believed that his conduct was lawful, in light of clearly established law and the

---

[6]  It is not entirely clear whether plaintiff is referring to the time period before or after the
April 19, 2006 chrono.  Accordingly, the undersigned's analysis does not turn on this
representation.

[7]  Plaintiff's previous motion for an injunction, ECF No. 58, was denied.  <u>See</u> ECF Nos.
59, 65.

1  information the officer possessed.  <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987).  These

2  questions may be addressed in the order that makes the most sense given the circumstances of

3  the case.  <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009).

4         For the reasons explained above, the facts do not demonstrate that any of the

5  moving defendants violated the Eighth Amendment.  Moreover, no reasonable officer would

6  have had reason to believe that it was unconstitutional to request or order a medical re-evaluation

7  of plaintiff's accommodation chrono, to discontinue the exemption from "get down" orders, or to

8  deny plaintiff's administrative appeal on the facts presented here.  That plaintiff required a cane

9  and housing accommodations for his mobility impairment, or that he wears an ADA vest, does

10  not mean that a reasonable officer should have concluded that requiring him to follow the

11  generally-applicable alarm rules would create a substantial risk of physical injury or

12  unconstitutional levels of pain.  Accordingly, the moving defendants are entitled to qualified

13  immunity.

14                                    <u>CONCLUSION</u>

15         For all the reasons explained above, IT IS RECOMMENDED that defendants'

16  November 11, 2012 motion for summary judgment, ECF No. 93, be granted.

17         These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within fourteen days after service of the objections.  The parties are

23  advised that failure to file objections within the specified time may waive the right to appeal the

24  ////

25  ////

26  ////

1   District Courts order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2   DATED: June 6, 2013

3

4                                    ALLISON CLAIRE
                                     UNITED STATES MAGISTRATE JUDGE
5

6

7   AC:009
    brow0661.msj
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                        14